IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ---------------------------------------------------- | : | |
| TERRI D. NAMETH | : | CASE NO.  1:04 CV 2282 |
| | : | |
| Plaintiff | : | |
| | : | MEMORANDUM OF OPINION AND |
| -vs- | : | ORDER DENYING THE DEFENDANT'S |
| | : | MOTION TO DISMISS FOR LACK OF |
| | : | SUBJECT MATTER JURISDICTION |
| CELINA FINANCIAL CORPORATION | : | (ECF 18) AND GRANTING THE |
| | : | DEFENDANT'S MOTION FOR |
| Defendant | : | SUMMARY JUDGMENT (ECF 18) |
| ---------------------------------------------------- | : | |

UNITED STATES DISTRICT JUDGE LESLEY WELLS

        This action arose from employer Celina Financial Corporation's ("Celina")

termination of Terri D. Nameth while she was on leave from work after the birth of her

son.  Ms. Nameth asserts five causes of action: (1) violation of the Family Medical

Leave Act (the "FMLA"); (2) violation of Ohio Revised Code §4112.02; (3) wrongful

discharge in violation of Ohio public policy; (4) intentional and negligent infliction of

emotional distress; and (5) loss of consortium.  Celina removed this action from state

court on 17 November 2004, ostensibly based upon federal question jurisdiction over

Ms. Nameth's FMLA claim and supplemental jurisdiction over Ms. Nameth's state law

claims.  (ECF 1).

        Celina now has moved to dismiss Ms. Nameth's claims based upon an absence

of subject matter jurisdiction, or in the alternative, for summary judgment.  (ECF 18).

Ms. Nameth filed a brief in opposition to Celina's motion, (ECF 29), and Celina filed a

reply.  (ECF 30).  Celina contends it is entitled to summary judgment or dismissal of this action because this Court does not have federal question jurisdiction over Ms. Nameth's FMLA claim, and as such, the Court cannot exercise supplemental jurisdiction over Ms. Nameth's remaining state law claims.  (ECF 18).  Alternatively, Celina argues that even if this Court has jurisdiction over Ms. Nameth's claims, she cannot prevail on her claims as a matter of law.  (Id.)  Ms. Nameth argues that this Court can exercise jurisdiction  in this action and that questions of fact exist regarding the merits of her FMLA claim and her claim under Ohio Revised Code §4112.02.  (ECF 29).  Ms. Nameth did not respond to Celina's arguments that it is entitled to summary judgment on her three remaining state law claims.  (Id.)

As explained below, this Court will not, on jurisdictional grounds, dismiss Ms. Nameth's claims since she has satisfied her burden to produce evidence establishing this Court's jurisdiction.  However, the Court will grant Celina's motion for summary judgment because Ms. Nameth has not satisfied her burden to raise an issue of fact that Celina violated her rights under the FMLA and Ohio Revised Code §4112.02.  Celina is also entitled to summary judgment on Ms. Nameth's remaining state law claims because Ms. Nameth has abandoned those claims.

## I.  FACTUAL BACKGROUND

Celina is an Ohio corporation selling multi-line property and casualty insurance products through a distribution system of independent insurance agents.  (ECF 16, ¶1; ECF 29, at 1).  Celina employs 50 or more persons at its "home office" in Celina, Ohio (the "Home Office"), and is an "employer" subject to the requirements of the FMLA. (ECF 16, at ¶8).  However, Celina does not employ 50 or more persons within 75 miles

2

of Cleveland, Ohio or Columbus, Ohio.  (ECF 18, Ex. 1, at ¶8 (the "Meinerding Dec.")).

On 2 December 2002, Celina hired Ms. Nameth as a Territorial Marketing Manager for its Northeast Ohio territory.  (ECF 16, at ¶4).  While employed with Celina, Ms. Nameth worked from her home in North Royalton, Ohio.  (ECF 36, at 17).  During the first month of her employment with Celina, Ms. Nameth received training at Celina's Home Office.  (Id.)  Thereafter, Ms. Nameth reported to Celina's Home Office about once a month.  (Id.)  In a  document setting forth expectations for Ms. Nameth's performance with Celina, Celina designated its Home Office as Ms. Nameth's work location.  (ECF 37, at 139 &  Exhibit 11;  ECF 29, at 6, n.1).

From her date of hire until on or about 7 November 2003, Ms. Nameth reported directly to Mike Wolfe, who was Director of Marketing for Celina. (ECF 36, at 17 & 66; ECF 29, at 3).  Mr. Wolfe worked primarily out of his home in Columbus, Ohio. (Meinerding Dec., at ¶4).  In November 2003, Mr. Wolfe resigned from Celina.  (Id. at ¶3).  Immediately after Mr. Wolfe's resignation, Ms. Nameth reported directly to Rod Stapleton, Senior Vice-President of Celina's Insurance Operations.  (ECF 36, at 67; ECF 37, at 8 & 28).  By late November 2003, Ms. Nameth was reporting to Dawn Muecke, who replaced Mr. Wolfe as Celina's Director of Marketing.  (ECF 16, ¶6).

In April 2003, Ms. Nameth advised Mr. Wolfe that she was pregnant and that her due date was 13 December 2003.  (ECF 16, ¶5; ECF 36, at 13, 72-73).  She communicated her intent to work until she went into labor and then to take leave of up to 12 weeks.  (ECF 36, at 75;  Id. at 82, 96-97 and Exhibit 18).  Mr. Wolfe referred Ms.

Nameth to Celina's Benefits Manager, Ruth Scott, who worked with Ms. Nameth

regarding the particulars of her benefits and anticipated leave from work.  (ECF 36, at

14, 75, 80, 89 & Exhibit 13).

Ms. Nameth understood that she had to work for Celina a full 12 months – until 2

December 2003 – before she would be eligible for leave under the FMLA.  On 19

November 2003, Ms. Scott responded to Ms. Nameth's query regarding how her FMLA

leave would be impacted if she were to deliver before having worked a full 12 months

for Celina.  (ECF 36, Exhibit 25).  Ms. Scott informed Ms Nameth that "two things would

be affected" if she delivered before her one year anniversary with Celina:

1.    The portion of your leave that would fall before 12/02/03 would
      not be considered FMLA.  The remainder of your leave from
      12/02/03 on would be FMLA.

2.    You must be on a paid leave on your anniversary date to
      receive the additional 5 days of sick time.  If you still have your
      current 5 sick days and 10.5 vacation days that we talked
      about in your 11/7/03 e-mail, this will not be a problem.

(Id.).  Ms. Nameth delivered her son on 26 November 2003, and did not return to work

after that date.  (ECF 16, ¶7).  Because Ms. Nameth delivered her son on 26 November

2003, she missed four days of work before her anniversary date  – Wednesday, 26

November 2003, Thursday, 27 November 2003, Friday, 28 November 2003 and

Monday, 1 December 2003.

On or about 1 December 2003, Ms. Scott provided Ms. Nameth with a document

titled "FMLA Individual Employee Notice" which informed that "ASSUMING ALL

REQUIREMENTS ARE MET, your absence which began (or begins) on 12-02-03 will

count as FMLA leave."  (ECF 36, Exhibit 33).  The memo dated 1 December 2003,

4

notified Ms. Nameth that she was "eligible for Family and Medical leave (FML) and that [Ms. Nameth's] sick leave will be counted as part of this leave."  (Id. at Exhibit 32).  The 1 December 2003 memo further informed:

> Our records show that as of the beginning of your FML on 12/02/03 you have 9 days of sick leave remaining for the year.  As we discussed, you will use your 10.5 days of vacation and 1 floating holiday after your sick pay is depleted.
>
> * * *
>
> Your FML for your own "serious health condition/birth of a child" is effective **December 2, 2003.**

(Id. (emphasis in original)).

On 28 January 2004, while Ms. Nameth was on leave, Mr. Stapleton, Ms. Muecke and Jane Meinerding, Celina's Director of Personnel, advised Ms. Nameth that her position was eliminated and that her employment with Celina was terminated effective that day.  (ECF 16, at ¶9; ECF 29, at 4).   Celina did not hire anyone to fill Ms. Nameth's position as a Territorial Marketing Manager in Northeast Ohio.  (Meinerding Dec., ¶7 & Exhibits 3-4).

## II.  THE LEGAL STANDARDS

### A.    Summary Judgment

Summary judgment is a mechanism for isolating and disposing of "factually unsupported claims or defenses," and is appropriate if the record evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Celotex v. Catrett, 477 U.S. 317, 323-24 (1986);  Fed. R. Civ. P. 56(c).  Courts must view the evidence in the light most favorable to the nonmoving party.  Matsushita Elec. Industrial Co. , 475 U.S. 574, 587 (1986).  And the moving party

5

always bears the initial burden of demonstrating the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.

When a motion for summary judgment is properly made and supported as provided in Rule 56(c), the nonmoving party must respond by "go[ing] beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324.  It is not enough for the nonmoving party to point to any alleged factual dispute;  rather, the nonmoving party must point to a genuine issue of material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A material fact is a fact that might affect the outcome of the suit under the governing substantive law.  Id.

**B.      Subject Matter Jurisdiction**

When subject matter jurisdiction is challenged pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the party asserting jurisdiction bears the burden of establishing that subject matter jurisdiction exists.  Moir v. Greater Cleveland Reg'l Transit Auth., 895 F.2d 266, 269 (6th Cir. 1990).  Rule 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally consist of two types – a facial attack or a factual attack.  Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990).   Facial attacks to subject matter jurisdiction merely question the sufficiency of the pleadings, and courts should apply the Rule 12(b)(6) standard in considering them. Id.  A factual attack contests the factual predicate for subject matter jurisdiction.  U.S. v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994).  In a factual challenge, no presumptive truthfulness applies to the factual allegations of the complaint, and the court is free to

6

weigh the evidence and satisfy itself as to the existence of its power to hear the case.

Id.; Moir, 895 F.2d at 269.

**C.      The Family Medical Leave Act**

The FMLA creates a private right of action entitling "eligible employees" to seek

both equitable relief and money damages "against any employer"[1] should that employer

"interfere with, restrain, or deny the exercise" of FMLA rights or discriminate against the

employee for exercising rights under the FMLA.  29 U.S.C.  §§2615 &  2617(a)(2).  One

right protected under the FMLA is the right of an eligible employee to take up to 12

weeks of leave "because of the birth of a son or daughter of the employee and in order

to care for such son or daughter." A concomitant right is that of an employee who has

taken FMLA leave "to be restored by the employer to the position of employment held

by the employee when the leave commenced." 29 U.S.C. §§2612(a)(1)(A) &

2614(a)(1)(A).  The rights guaranteed under the FMLA are not absolute.  E.g.,

Pharakhone v. Nissan N. Am., Inc., 324 F.3d 405, 407-08 (6th Cir. 2003).  For instance,

an employer need not reinstate an employee who would have lost her job even if she

had not taken FMLA leave.  See 29 U.S.C. § 2614(a)(3)(B);  29 C.F.R. § 825.216.

The Sixth Circuit Court of Appeals has made clear that federal courts cannot

exercise federal question jurisdiction over an FMLA claim unless the claim is brought by

an "eligible employee."  Douglas v. E.G. Baldwin & Assocs., Inc. 150 F.3d 604, 608 (6th

Cir. 1998).  An "eligible employee" is defined under the FMLA as a person who has

---

[1]  FMLA defines "employer" as "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or proceeding calendar year."  29 U.S.C. § 2611(4)(A)(i-ii).

been employed "for at least 12 months by the employer with respect to whom leave is requested" (the "12 Month Requirement").  29 U.S.C. §2611(2)(A)(i).  The FMLA further defines "eligible employee" as excluding any employee "who is employed at a worksite at which [her] employer employs less than 50 employees if the total number of employees employed within 75 miles of that worksite is less than 50" (the "Worksite Exclusion").  29 U.S.C. §2611(2)(B)(ii).   The determination whether an employee meets the 12 Month Requirement must be made "as of the date leave commences."   29 C.F.R.  §825.110(d).  In contrast, the determination of whether the employee falls under the Worksite Exclusion must be made as of the date "the employee gives notice of the need for leave."  29 C.F.R. §825.110(f).

### III. <u>ANALYSIS</u>

**A.     Dismissal of Ms. Nameth's Claims Based Upon
        <u>Absence of Subject Matter Jurisdiction Is Not Warranted</u>**

This Court must first address whether it has  jurisdiction over Ms. Nameth's claims.  <u>See</u> <u>Douglas</u>, 150 F.3d at 606-07.  Celina argues this Court does not have jurisdiction because Ms. Nameth cannot establish that she was an "eligible employee" under the FMLA since: (1) Ms. Nameth falls under the Worksite Exclusion in that Celina employed less than 50 employees within 75 miles of Ms. Nameth's worksite; and (2) Ms. Nameth does not satisfy the 12 Month Requirement because her leave commenced on 26 November 2003 – several days prior to Ms. Nameth's one year anniversary with Celina.  (ECF 18, at 5-7).

8

As to the Worksite Exclusion, the dispute between the parties turns on the location of Ms. Nameth's worksite.  Ms. Nameth contends that she does not fall under the Worksite Exclusion because her worksite was Celina's home office in Celina, Ohio where 50 or more employees indisputably were employed.  (ECF 29, at 6).  Celina argues that Ms. Nameth's worksite was the residence of either Mr. Wolfe or Ms. Muecke because Ms. Nameth "reported" to and "received her assignments from" Mr. Wolfe and Ms. Muecke who both worked from their homes.  (ECF 18, at 6 & ECF 30, at 3).  The parties' dispute is resolved with reference to the Code of Federal Regulations which prescribe rules for determining the location of an employee's worksite:

> (a) . . . An employee's worksite under FMLA will ordinarily be the site the employee reports to or, if none, from which the employee's work is assigned.
>
> * * *
>
> (2) For employees with no fixed worksite, e.g., . . . salespersons, . . . the "worksite" is the site to which they are assigned as their home base, from which their work is assigned, or to which they report. . . .  An employee's personal residence is not a worksite in the case of employees such as salespersons who travel a sales territory and who generally leave to work and return from work to their personal residence . . . .  Rather, their worksite is the office to which they report and from which assignments are made.

29 C.F.R. §825.111(a).  A straightforward application of the foregoing regulation reveals that Ms. Nameth has satisfied her burden of producing evidence that Celina's Home Office was Ms. Nameth's worksite.

Ms. Nameth was an employee with no "fixed worksite" as described in 29 C.F.R. §825.111(a).  As such, her worksite may be "the site to which [she] is assigned as [her] home base, [the site] from which her work is assigned, or [the site] to which [Ms.

9

Nameth] report[s]."  Id.   The record evidence is that Celina itself designated Ms.

Nameth's employment "location" as Celina's home office in Celina, Ohio.[2]  (ECF 37,

Exhibit 11).  Because Celina indisputably employed at least 50 persons at its Home

Office, Ms. Nameth does not fall into the Worksite Exception to the "eligible employee"

definition under the FMLA.[3]

Celina next argues that Ms. Nameth is not an "eligible employee" under the

FMLA because she does not satisfy the 12 Month Requirement in that Ms. Nameth's

leave began on 26 November 2003 –  four work days before Ms. Nameth's one year

anniversary of employment with Celina.  (ECF 18, at 7).  Ms. Nameth counters that she

does satisfy the 12 Month Requirement because the four days of work missed by Ms.

Nameth before her 12 month anniversary at Celina were approved absences, and her

FMLA leave actually began on 2 December 2003.  (ECF 29, at 6-7).

The Code of Federal Regulations provides guidance in resolving the parties'

dispute by specifying certain days that should be included in determining whether an

employee has worked the requisite length of time:

_____

[2]The document in which Celina designated its Home Office as Ms. Nameth's work
location was a "benchmark" form which was used to establish performance expectations for Ms.
Nameth.  (ECF 37, at 139 &  Exhibit 11).  The form provided four choices for the reviewed
employee's work "Location" – Clarksburg, Delaware, Field or Home Office.  (Id.)  Home Office
was marked as Ms. Nameth's work location as opposed to Field.  (Id.)

[3] In support of its argument that this Court should consider the residence of Mr. Wolfe or
Ms. Muecke to be Ms. Nameth's worksite, Celina cites a single unreported case from the
Federal District Court for the Eastern District of Pennsylvania.  Cialini v. Nilfisk-Advance Am.,
Inc., No. CIV. A. 99-3954, 2000 WL 230215 (E.D. Pa. Feb. 28, 2000) (cited at ECF 30, 3).  In
addition to having no precedential authority, the Cialini case is distinguishable in that the court
did not consider to what site the employees were "assigned as their home base."  Id. at *3
(ignoring the question of the site to which certain salespersons were assigned and focusing only
on "whether the Malvern facility was the site from which the sales representatives' work was
assigned . . . or the site to which they reported").

> The 12 months an employee must have been employed by the employer need not be consecutive months.  If an employee is maintained on the payroll for any part of a week, including any periods of paid or unpaid leave (sick, vacation) during which other benefits or compensation are provided by the employer (e.g., workers' compensation, group health plan benefits, etc.), the week counts as a week of employment. . . .

29 C.F.R. §825.110(b).

The record evidence indicates that Celina maintained Ms. Nameth on its payroll and treated Ms. Nameth's four days absence from work before 2 December 2003 as approved absences.  Celina's Benefits Manager, Ruth Scott, explained that Celina would maintain Ms. Nameth on its payroll on non-FMLA leave if she were to deliver her son before 2 December 2003:

> 1.  The portion of your leave that would fall before 12/02/03 would not be considered FMLA.  The remainder of your leave from 12/02/03 on would be FMLA.
>
> 2.  You must be on a paid leave on your anniversary date to receive the additional 5 days of sick time.  If you still have your current 5 sick days and 10.5 vacation days that we talked about in your 11/7/03 e-mail, this will not be a problem.

 (ECF 36, Exhibit 25).

When Ms. Nameth delivered her son before 2 December 2003, Ms. Scott sent Ms. Nameth documentation confirming that her FMLA leave did not begin until 2 December 2003:

> Our records show that as of the beginning of your FML on 12/02/03 you have 9 days of sick leave remaining for the year.  As we discussed, you will use your 10.5 days of vacation and 1 floating holiday after your sick pay is depleted.

> \* \* \*

11

> Your FML for your own "serious health condition/birth of a child" is effective **December 2, 2003.**

(ECF 36, Exhibit 32;  e.g., id. at Exhibit 33 (stating that "your absence which began (or begins) on 12-02-03 will count as FMLA leave")).

Given the foregoing evidence, this Court finds that Ms. Nameth's four days of absence from work before her 12 month employment anniversary are properly counted as days of employment under 29 C.F.R. §825.110(b).  Thus, Ms. Nameth satisfies the 12 Month Requirement because she was employed by Celina for 12 months on 2 December 2003 – the date her FMLA leave commenced.  See Babcock v. Bellsouth Advertising & Publishing Corp., 348 F.3d 73 (4th Cir. 2003) (affirming judgment that the plaintiff satisfied the 12 Month Requirement and noting that an "employee's absence from work for medical reasons might be authorized by the employer's own leave policies, the FMLA, or both").

Celina directs this Court's attention to two cases where courts have purportedly "rejected [the] argument that employer-approved leave can be used to reach the FMLA's 12-month eligibility threshhold."  (ECF 30, at 3-4 (citing Sewall v. Chicago Transit Authority, No. 99 C 8372, 2001 WL 40802 (N.D. Ill., Jan. 16, 2001) and Walker v. Elmore County Bd. Of Educ., 389 F.3d 1249, 1253 n.10 (11th Cir. 2004)).  Walker, the only reported case cited by Celina, is distinguishable on its facts.  There was no evidence before the Walker court that the plaintiff was "on the payroll" for the time leading up to the plaintiff's anniversary date.  Walker, 389 F.3d at 1250-51.  To the contrary, the Walker plaintiff's employment was terminated long before her FMLA leave

could have commenced.  <u>Id.</u> at 1251.[4]  In contrast to the <u>Walker</u> plaintiff, Ms. Nameth

was indisputably "on the payroll" for the four work days preceding her anniversary date,

and Ms. Nameth was not terminated until almost eight weeks after her FMLA leave

commenced.

Based upon the foregoing law and record evidence, the Court finds that Ms.

Nameth is an "eligible employee" as defined under the FMLA.  Ms. Nameth was

employed "for at least 12 months" by Celina on 2 December 2003 – the date her FMLA

leave commenced.  Further, Ms. Nameth has satisfied her burden of producing evidence

that her worksite was Celina's Home Base in Celina, Ohio where Celina employed more

than 50 persons.  Because Ms. Nameth is an eligible employee, this Court can exercise

federal question jurisdiction over Ms. Nameth's FMLA claim and supplemental

jurisdiction over Ms. Nameth's state law claims.  Thus, Celina's motion for dismissal of

Ms. Nameth's claims based upon the absence of subject matter jurisdiction is denied.


**B.**    **Celina Is Entitled to Summary Judgment on Each of Ms. Nameth's Claims**

Celina has moved for summary judgment as to all five causes of action asserted

in Ms. Nameth's Complaint:  (1) violation of the Family Medical Leave Act (the "FMLA");

(2) violation of Ohio Revised Code §4112.02; (3) wrongful discharge in violation of Ohio

---

[4]In <u>Walker</u>, the issue on appeal was "whether a request for maternity leave made by an employee who is ineligible at the time of her request constitutes an attempt to exercise a FMLA right."  <u>Walker</u>, 389 F.3d at 1250.  The <u>Walker</u> court's negative answer to this question has no bearing on the issue presented in this case – whether non-FMLA, employer-approved absences should be counted in determining whether the 12 Month Requirement is satisfied.  The <u>Walker</u> plaintiff's argument that, had she not been terminated, she could have used sick leave to establish twelve months of employment after her delivery date, was disposed of in a footnote by the <u>Walker</u> court.  <u>Id.</u> at 1253, n.10.

public policy; (4) intentional and negligent infliction of emotional distress; and (5) loss of

consortium.  (ECF 18; ECF 1, Exhibit 1).  In her reply brief, Ms. Nameth does not even

reference her state law wrongful discharge, intentional infliction of emotional distress,

and loss of consortium claims.  (ECF 29).  Because Ms. Nameth only disputes Celina's

entitlement to summary judgment on her FMLA and pregnancy discrimination claims, the

Court finds that Ms. Nameth has abandoned her remaining claims, and summary

judgment for Celina on Ms. Nameth's abandoned claims is warranted.  See Garcia v.

ANR Freight Sys., Inc., 942 F.Supp. 351, 354 n.1 (N.D. Ohio 1996).  Below, the Court

considers in detail the parties' argument for and against summary judgment on Ms.

Nameth's FMLA and pregnancy discrimination claims.

> **1.    Celina Is Entitled to Summary Judgment on the FMLA Claim**

In Skrjanc v. Great Lakes Power Service Co., the Sixth Circuit Court of Appeals

articulated three elements a plaintiff must establish to avoid summary judgment on an

FMLA claim.  272 F.3d 309, 314-15 (6th Cir. 2001).  Under Skrjanc, Ms. Nameth must

designate evidence raising an issue of fact that: (1) she availed herself of a protected

right under the FMLA by notifying Celina of her intent to take leave;  (2) she was

adversely affected by an employment decision when she was discharged; and (3) a

causal connection exists between Ms. Nameth's request for leave and Celina's adverse

employment decision.  Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 314-15

(6th Cir. 2001).  Under the causation element, a plaintiff must show that she was

discharged because she took leave – "or at least that [her] taking of leave was a

'negative factor' in the employer's decision to discharge."  Pharakhone, 324 F.3d at 408;

Heady v. United States Enrichment Corp., 146 Fed. Appx. 766, 769-70; 2005 U.S. App.

LEXIS 17555 *8-*9   (6th Cir. 2005) ("To survive summary judgment, [plaintiff] must provide sufficient evidence to show that the exercise of her FMLA rights was a motivating factor in her discharge.").

Where no legitimate business purpose is apparent in the defendant's challenged action, temporal proximity between the adverse employment action and the employee's exercise of a right under the FMLA may be sufficient to satisfy the causation element of the plaintiff's case.  See Heady, 2005 U.S. App. LEXIS 17555.  However, the causation element may not be established in situations such as a corporate reorganization or reduction in force, if the employee would have lost her job even if she had not taken FMLA leave.  Id. (affirming summary judgment for employer where plaintiff's employment was terminated as part of a reduction in force);  Ostermyer v. Toledo Clinic, Inc., Case Number 3:03CV7736, 2005 WL 927120, at *5 (N.D. Ohio, 18 April 2005) (affirming summary judgment for employer where defendant did not hire anyone to replace plaintiff).[5]

Celina does not dispute that Ms. Nameth can satisfy the first two elements of Skrjanc, nor could it.  In its motion for summary judgment, Celina details Ms. Nameth's efforts to notify Celina that she was pregnant and intended to take leave, and there is ample record evidence that Ms. Nameth was adversely affected by Celina's decision to

---

[5]E.g., Lepore v. Lanvision Sys., Inc., 2004 U.S. App. LEXIS 21742 (3d Cir., 28 Sept. 2004) (affirming summary judgment for employer);  Yashenko v. Harrah's NC Casino Co., LLC, 352 F.Supp. 2d 653, (W.D.N.C. 2005) (granting summary judgment to employer where plaintiff's position was eliminated during leave);  Pierce v. Alice Peck Mem'l. Hosp., 2002 U.S. Dist. LEXIS 155516 (D.N.H., 11 March 2002) (granting summary judgment to employer who reorganized workplace);  Sauer v. McGraw-Hill Cos., Inc., 2001 WL 1250099, *50-*58 (D. Colo 2001) (granting summary judgment to defendant who eliminated plaintiff's position as part of a reorganization that took place while the plaintiff was on maternity leave).

terminate her employment eight weeks after the birth of her son, and four weeks before she was scheduled to return from her FMLA leave.  Celina focuses only on the third element under Skrjanc, seeking summary judgment on Ms. Nameth's FMLA claim on the ground that Ms. Nameth cannot  "produce evidence from which a reasonable trier of fact could conclude that there was a causal connection between her taking leave and her termination from Celina."[6]  (ECF 18, at 7).  According to Celina, Ms. Nameth can establish no causal link because the undisputed evidence is that Ms. Nameth's employment was terminated as part of a reduction in force related to a "corporate restructuring plan aimed at increasing efficiency by eliminating the [territorial marketing manager] position and developing a marketing process that would involve more individuals in agency contacts."  (ECF 18, at 7-8).

Ms. Nameth's sole argument in opposition to Celina's motion for summary judgment is that Celina's "reorganization . . . was a sham."  (ECF 29, at 11).  According to Ms. Nameth, Celina's reorganization was a "sham" because: (1) Ms. Muecke  "thought up" the reorganization on her own, without any written plan; (2) Ms. Muecke's plan "still is not in place today;" and (3) of five territory marketing managers employed by Celina, the only two who were let go were pregnant and on-leave.  (Id. at 11-12 (citing Muecke deposition at 16-19 & 31-32)).  In support of her arguments, Ms. Nameth points to the deposition testimony of Dawn Muecke.  (Id. at 11-14).  Celina counters that the

---

[6]In her Complaint, Ms. Nameth alleged that Celina violated an unspecified provision of the FMLA.  (Complaint, ¶16 (alleging in a single paragraph that "Celina has violated the [FMLA] to the detriment of Nameth.")).  Ms. Nameth has offered no further specificity regarding the precise basis of her FMLA claim.  Instead, in opposing Celina's motion for summary judgment, Ms. Nameth lists the "variety of ways" that an employer can violate the FMLA, but does not specify how Celina violated the FMLA.  (ECF 29, at 9-10).

evidence to which Ms. Nameth points does not support her arguments, and the single case cited by Ms. Nameth is distinguishable on its facts.  (ECF 30).

The record evidence establishes that nine positions were available in Celina's Marketing Department from 2 December 2002 until 28 January 2004, including a Director and six Territorial Marketing Managers.  (ECF 29, at 2). The territories assigned to the Territorial Marketing Managers were:  1) Northeast Ohio, 2) Northwest Ohio, 3) Central and Southeast Ohio, 4) Southwest Ohio, 5) Northern Indiana and 6) Central and Southern Indiana.  (Id.)  When Celina hired Ms. Nameth as the Territorial Marketing Manager for the Northeast Ohio territory, Mr. Wolfe was the Director of the Marketing Department.  (Id. at 3).  Mr. Wolfe retired as Director of the Marketing Department, and was replaced by Ms. Muecke in November of 2003.  (Id.)

Before her promotion, Ms. Muecke had been the Territorial Marketing Manager for the Southwest Ohio territory.  (Id.)  After Celina promoted Ms. Muecke to Director of the Marketing Department, Ms. Muecke proposed a new organizational structure for the Marketing Department.  (ECF 29, at 3; ECF 19 at 8-9; ECF 37, at 66).  Under Ms. Muecke's proposal, Celina would eliminate the Territorial Marketing Manager positions altogether and have one "Agency Manager" assigned to Indiana and another "Agency Manager" assigned to Ohio.  (ECF 19, at 10-13; ECF 37, 82-85 & 115-17).  In addition, the Marketing Department would include an Underwriting/Training Specialist.  (ECF 37, at 130).

Pursuant to Ms. Muecke's proposal, Dennis Smith, who had been the Territorial Marketing Manager for Northern Indiana, was made the Agency Manager for all of Ohio.  (ECF 37, at 120-21 & 129-30).  Valarie Mullins, who had been the Territorial Marketing

17

Manager for Southern Indiana, was made the Agency Manager for all of Indiana.  (Id.)
Kim Bauer, who had been the Territorial Marketing Manager for Central/Southeast Ohio,
became the Underwriting/ Training Specialist.  Celina did not hire anyone to replace Ms.
Muecke in the Southwest Ohio territory, and Celina terminated the Territorial Marketing
Managers for Northeast Ohio (Ms. Nameth), and for Northwest Ohio (Traci James
Whitcraft).  Thus, the evidence is undisputed that the reorganization resulted in a net
loss of three positions in Celina's Marketing Department, and was in fact, a reduction in
force.

Ms. Nameth's arguments that the reorganization was a "sham" are unavailing.
Ms. Nameth relies upon Brenlla v. LaSorsa Buick Pontiac Chevrolet, 2001 WL 1059117
(S.D.N.Y., 28 May 2000), as sole support for her contention that "[i]n similar situations
courts have viewed such so-called reorganizations as shams and not motivated by
legitimate business concerns."  (ECF 29, at 14).  In fact, Brenlla, which is unreported
and was decided by a court outside the Sixth Circuit, was dissimilar from the present
case because the Brenlla defendant hired additional employees to do those tasks
formerly performed by the Brenlla plaintiff.  Here, the evidence is undisputed that Celina
did not hire anyone to do the work formerly done by Ms. Nameth, Ms. Whitcraft, or the
work done by Ms. Muecke in her Territorial Marketing Manager position in Southwest
Ohio.  Instead, as contemplated by Ms. Muecke, the "field work" formerly done by the
Territorial Marketing Managers was redistributed to the Agency Managers, Celina's
existing underwriters, Mr. Stapleton, and Ms. Muecke herself.

Ms. Nameth's argument is simply that Celina's decision to retain six employees in
the Marketing Department who were not pregnant or on maternity leave and to terminate

18

two employees who were pregnant or on maternity leave is evidence that the

reorganization was a sham.  (ECF 29).  However, in its motion for summary judgment,

Celina cited record evidence detailing its rationale for who it chose to retain during

Celina's Marketing Department reorganization and reduction in force.  In her opposition

brief, Ms. Nameth does not dispute Celina's rationale, nor does she argue or present

evidence that she was more qualified than those persons who were retained and given

new positions in Celina's Marketing Department.  Under these circumstances, the fact

that Celina retained six employees who were not on FMLA leave while terminating two

employees who used FMLA leave does not create an issue of fact with regard to the

causation element in this case.[7]

Although there is a direct temporal correlation between Ms. Nameth's exercise of

a right under the FMLA and Celina's termination of Ms. Nameth's employment, Ms.

Nameth still cannot satisfy the causation element of her FMLA claim because Celina has

established that Ms. Nameth would have been terminated and her position at Celina

eliminated regardless of whether Ms. Nameth had taken FMLA leave.  Based upon the

evidence relied upon and arguments made by Ms. Nameth, no reasonable jury could

conclude that Celina's reorganization of its Marketing Department was a sham.  Thus,

---

[7]Celina has presented this Court with evidence that its employees regularly take FMLA leave and return to their jobs at Celina without incident.  At least two Celina employees were promoted while absent from work on FMLA leave.  Celina's pattern of permitting FMLA leave without incident further debunks Ms. Nameth's contention that the "coincidence" of Celina terminating two employees on FMLA leave during the reorganization precludes entry of summary judgment in Celina's favor.  See e.g. Skrjanc, 272 F.3d at 315 (noting that an employer's FMLA compliance "gives its proffered nondiscriminatory reason for discharging" the plaintiff credibility); Kaylor v. Fannin Reg'l Hosp., Inc., 946 F.Supp. 988 (N.D. Ga. 1996) (granting summary judgment to defendant and noting defendant's prior pattern of compliance with the FMLA).

Celina is entitled to summary judgment on Ms. Nameth's FMLA claim.

**2.      Celina Is Entitled to Summary Judgment on
the Ohio Law Pregnancy Discrimination Claim**

To avoid summary judgment on her pregnancy discrimination claim under Ohio

Revised Code, §4112.02, Ms. Nameth must designate evidence raising an issue of fact

that: (1) she was pregnant;  (2) Celina terminated her employment; and (3) Celina

replaced her with a non-pregnant employee. Frantz v. Beechmont Pet Hosp., 690

N.E.2d 897, 901 (Ohio App. 1996).  Under this standard, Celina argues that it is entitled

to summary judgment because Ms. Nameth was "not replaced by a non-pregnant

employee."  (ECF 18, at 9).

Ms. Nameth admits that Celina has not hired a single new employee to perform

the duties previously performed by her.  (ECF 18, at 9).  Nonetheless, Ms. Nameth

argues in a footnote that summary judgment is not appropriate because Ms. Muecke's

deposition testimony reveals direct evidence of Celina's intent to discriminate against

Ms. Nameth: "Unfortunately, uh-huh.  Two of my – I don't – I can't help that they got

pregnant. . . . If they had not been pregnant, nothing would have changed."  (ECF 29, at

12, n.2 (quoting Muecke Depo., at 87-88).  The testimony quoted by Ms. Nameth is not

direct evidence of pregnancy discrimination because, read in context, it is clear that Ms.

Muecke's statement that "nothing would have changed" does not express a belief that

the Marketing Department would not have been reorganized had Ms. Nameth not been

pregnant.  Rather, Ms. Muecke was simply reiterating her testimony that regardless of

whether Ms. Nameth and Ms. Whitcraft were pregnant, Ms. Muecke would still have

decided that the Marketing Department should be reorganized:

Q: . . . Why was it that the two territorial marketing managers that were pregnant and/or on maternity leave were the only two not kept in the restructured marketing department?

A: Total coincidence.

Q: Coincidence?

A: Yeah.  Terri was going to be back in a couple weeks.  It wasn't – I mean that – this was position-driven. . . . This was not about names.  This was not about performance.  It's nothing less than a coincidence.

Q: What do you mean Terri was going to be back in a couple weeks . . . ?

A: By the time the final decision was made, she was coming back in February.  We were discussing this in January.  I mean basically by the time we got the program off and running or by the time we do our agency reviews, which is when the year really kicks off, Terri would have been back.  So in other words, . . . her pregnancy wasn't interfering with anything.  It was fine.  That pregnancy had nothing to do with this . . . .

*  *  *

Q: . . . You are saying that's a coincidence --

*  *  *

A: Unfortunately, uh-huh.  Two of my – I don't – I can't help that they got pregnant.  I don't know what you want me to say.

Q: Does that mean that you wish they wouldn't have gotten pregnant?

A: It wouldn't have mattered either way.  It's just coincidence that they were pregnant.  If they had not been pregnant, nothing would have changed.

(ECF 19, at 86-88).  Thus, read in context, Ms. Muecke's deposition testimony is clearly not direct evidence of discrimination and does not raise an issue of fact precluding entry of summary judgment.

  Because Ms. Nameth cannot prevail on her FMLA or Ohio statutory claims, she cannot prevail on her public policy wrongful termination claim either.  <u>Berge v. Columbus</u>

Cmty. Cable Access, 736 N.E.2d 517, 534-35 (Ohio App. 1999) (affirming directed verdict for employer on public policy claim due because complete relief for handicap discrimination/wrongful termination claim was available under §4112.02). Thus, even if Ms. Nameth had not abandoned her wrongful termination claim, Celina still would be entitled to summary judgment.

## IV.  CONCLUSION

For the reasons set forth above, the defendant's motion for dismissal based upon lack of subject matter jurisdiction (ECF 18) is denied, and defendant's motion for summary judgment (ECF 18) is granted.

IT IS SO ORDERED.


 /s/Lesley Wells                                    
UNITED STATES DISTRICT JUDGE


Dated: 2 March 2006

22